UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ORTHOSUPPLY MANAGEMENT, INC., ) | |
| ) | |
| Plaintiff ) | |
| VS. ) | |
| ) | |
| LIFE PHARMACEUTICALS MANAGEMENT ) | |
| GROUP, INC. ) | |
| SIROUS SORAT ) | C.A. NO. 12-_____-_____ |
| DEUTSCHE MEDICAL SERVICES, INC. ) | |
| THOMAS VAN AUKEN ) | |
| ) | |
| Defendants ) | |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

The plaintiff, Orthosupply Management, Inc., ("OSMI") bring this action seeking damages for defendants' fraud, misrepresentation, breach of contract and unfair business practices.

Defendant, Life Pharmaceuticals Management Group, Inc. sells medical compounds and also provides medical billing services. Sirous Sorat ("Sorat") owns and controls Life Pharmaceuticals. On or about 2007, Life Pharmaceuticals had accumulated a large amount medical billing receivables through the sale of transdermal compounds (the "LP Receivables") to persons whose injury treatments were allegedly covered by California Workman's Compensation Insurance. A large amount of the LP Receivables, however, was invoices for prescriptions that had never actually been dispensed by Life Pharmaceuticals and were therefore fraudulent. In addition, a substantial portion of the LP Receivables was ineligible for coverage by Workman's Compensation Insurance. Both Life Pharmaceuticals and Sorat knew that the LP Receivables

1

were largely fraudulent. (See Criminal Complaint, Plea Agreement and Agreed Statement of Facts attached as Exhibits A, B, & C).

OSMI is a Massachusetts Company whose principal place of business, operations and employees have always been located in Massachusetts. On or about 2007, Sorat became acquainted with an OSMI employee, Robert Coffil and through Coffil endeavored to sell the LP Receivables to OSMI. To assist in this effort, Sorat enlisted the service of Thomas Van Auken and Deutsche Medical. Life Pharmaceuticals, Van Auken and Deutsche Medical, at all times, where under Sorat's control and acted as agents and brokers for Sorat in the sale of the fraudulent LP Receivables to OSMI. Sorat, Van Auken, and Life Pharmaceuticals and Deutsche Medical represented to OSMI that the LP Receivables were collectable through Workman's Compensation Insurance and had a value of approximately $12,000,000.

By early 2007, a deal was struck and OSMI agreed to purchase the LP Receivables from Sorat and Life Pharmaceuticals, through Deutsche Medical, for a discounted price of approximately $8,000,000. All the defendants represented and warrantied that the fraudulent LP Receivables were in fact legitimate and collectable at face value. On or about April 30, 2007, in reliance on the Defendants' representations, OSMI purchased the LP Receivables for a price of approximately $8,000,000. At all times relevant to the sale of the LP Receivables, Sorat, Van Auken, Life Pharmaceuticals and Deutsche Medical knew that the LP Receivables were largely fraudulent and worthless. At all times relevant to the sale of the LP Receivables, the Defendants never disclosed to OSMI that the LP Receivables were indeed largely fraudulent and worthless.

On or about July of 2008, OSMI subcontracted collection of the LP Receivables to outside consultants, MDwerks, Inc. and Jeanine Boudreau ("Boudreau") . On or about September of 2008, Boudreau determined that the LP Receivables were largely fraudulent or

uncollectable and worthless. Boudreau withheld this information from OSMI and instead, contacted the United States Attorney ("U.S. Attorney") and the Federal Bureau of Investigation ("FBI"). At Boudreau's behest the FBI and U.S. Attorney began a secret investigation into the LP receivables. On or about January of 2009, the U.S. Attorney and FBI publicly revealed their investigation into the LP receivables and OSMI learned that the LP Receivables were largely fraudulent and worthless. On May 1, 2009, Sorat admitted to orchestrating the foregoing scheme to defraud OSMI and pled guilty to one count of wire fraud in the U.S. District Court in New Hampshire. (See Criminal Complaint, Plea Agreement and Agreed Statement of Facts attached as Exhibits A, B, & C).

## JURISDICTION & VENUE

1. Jurisdiction is proper pursuant to 28 U.S.C. § 1332(a), as there is complete diversity among the parties and the amount in controversy exceeds the sum or value of $75,000.00.

2. Venue is proper pursuant to 28 U.S.C. § 1391(a), as Massachusetts is the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred.

## PARTIES

3. The plaintiff, Ortho Supply Management, Inc. ("OSMI"), is Massachusetts Corporation with a former principal place of business located at 237 Cedar Hill Street, Marlborough, Middlesex County, Massachusetts and a current principal place of business at 68 Phillips Beach Road, Swampscott, MA.

4. The defendant, Life Pharmaceuticals Management Group, Inc. ("Life Pharmaceuticals"), is a California Corporation with a principal place of business located at 13896 harbor Blvd, Ste 5C, Garden Grove, California 92843-4045.

5. The defendant, Sirous Sorat. ("Sorat"), is an individual residing at 1 Mirini Drive, Mission Viejo, CA.

6. The defendant, Thomas Van Auken ("Van Auken"), is a natural person residing at 630 S Euclid Street, Anaheim, California  92802.

7. The defendant, Deutsche Medical Services, Inc. ("Deutsche Medical") is a California Corporation with a principal place of business at 630 S Euclid Street, Anaheim, California  92802.

## FACTS

8. Life Pharmaceuticals is engaged in the business of selling prescription transdermal compounds and providing related insurance billing services.

9. Sorat founded, owns and controls Life Pharmaceuticals.

10. OSMI was also engaged in providing billing services and insurance verification for clients in the health care industry.

11. OSMI is a Massachusetts company which at all times relevant to this complaint had officers, employees, operations and a principal place of business in Massachusetts.

12. On or about 2007, Sorat, by and through his company, Life Pharmaceuticals, had accumulated a large amount medical billing receivables through the sale of transdermal compounds (the "LP Receivables") to persons whose injury treatments were allegedly covered by California Workman's Compensation Insurance.  (See Criminal Complaint, Plea Agreement and Agreed Statement of Facts attached as Exhibits A, B, & C).

13. Large amounts of the LP Receivables, however, were invoices for prescriptions that had never actually been dispensed by Life Pharmaceuticals and were therefore fraudulent. .

(See Criminal Complaint, Plea Agreement and Agreed Statement of Facts attached as Exhibits A, B, & C).

14. In addition, a certain amount of the LP Receivables represented invoices for sample product and were also fraudulent. . (See Criminal Complaint, Plea Agreement and Agreed Statement of Facts attached as Exhibits A, B, & C).

15. In addition, certain amounts of the LP Receivables were not eligible for coverage by Workman's Compensation Insurance.

16. Although Sorat and Life Pharmaceuticals, at all times relevant to this Complaint, represented that the face value of the LP Receivables totaled approximately $12,000,000.00, and were covered by California Workman's Compensation Insurance, the majority of the LP Receivables were actually fraudulent or ineligible for Workman's Compensation Insurance coverage.

17. At all times relevant to this complaint, Deutsche Medical and Van Auken were controlled by Sorat and acted as his agents.

18. Sorat and Life Pharmaceuticals employed and directed Deutsche Medical and Van Auken to broker a sale of the fraudulent LP Receivables to OSMI.

19. Sorat, Life Pharmaceuticals, Deutsche Medical and Van Auken packaged the LP Receivables for sale while they knew or should have known that the LP Receivables were largely fraudulent or ineligible for Workman's Compensation Insurance coverage.

20. On or about February of 2007, Sorat, Life Pharmaceuticals, Van Auken and Deutsche Medical contacted OSMI management in Massachusetts and offered to sell the LP Receivables to OSMI at a steep discount.

21. Sorat, Life Pharmaceuticals, Van Auken and Deutsche Medical represented and warrantied to OSMI officers in Massachusetts that the LP Receivables were covered by California Workman's Compensation Insurance and represented bona fide insurance claims. At the time that they made these representations, Sorat, Life Pharmaceuticals, Van Auken and Deutsche Medical knew or should have known that these representations were false. (See Criminal Complaint, Plea Agreement and Agreed Statement of Facts attached as Exhibits A, B, & C).

22. Sorat, Life Pharmaceuticals, Van Auken and Deutsche Medical also represented to OSMI that the LP Receivables had a collectable insurance value of twelve million dollars but could be purchased through Deutsche Medical for approximately $8,000,000. At the time that they made these representations, Sorat, Life Pharmaceuticals, Van Auken and Deutsche Medical knew or should have known that these representations were false. (See Criminal Complaint, Plea Agreement and Agreed Statement of Facts attached as Exhibits A, B, & C).

23. OSMI, relying on Defendants' representations, reasonably expected that there would be substantial profit from the anticipated collection of these receivables.

24. At all times relevant to negotiation of the LP Receivable sale, the Defendants represented to the OSMI officers in Massachusetts that the LP Receivables were valid, legitimate, and collectible receivables. At the time that they made these representations, Sorat, Life Pharmaceuticals, Van Auken and Deutsche Medical knew or should have known that these representations were false. (See Criminal Complaint, Plea Agreement and Agreed Statement of Facts attached as Exhibits A, B, & C).

25. In April of 2007 and in reliance on the Defendants' representations, OSMI executed a Massachusetts contract (in Massachusetts) to purchase the LP Receivables for approximately $8,000,000 from Deutsche Medical (the "Contract").

26. At all times relevant to the sale of the LP Receivables, Deutsche Medical and Van Auken were acting as agents for Sorat and Life Pharmaceuticals. (See Criminal Complaint, Plea Agreement and Agreed Statement of Facts attached as Exhibits A, B, & C).

27. The Contract expressly warranted that "each prescription entered into ORTHOSUPPLY's management system was dispensed pursuant to (a) presentation of a valid written prescription signed by a properly licensed physician. Furthermore, COMPANY warrants to ORTHOSUPPLY MANAGEMENT that such Prescription was dispensed in accordance with and compliance with all applicable federal, state and local laws and regulations".

28. As part of the Contract, Sorat expressly warrantied to OSMI officers in Massachusetts that the LP Receivables were legitimate and collectible. (See Criminal Complaint, Plea Agreement and Agreed Statement of Facts attached as Exhibits A, B, & C).

29. By mid-2008, OSMI subcontracted collection of the LP Receivables to MDWerks, Inc. and Global Healthcare Recovery Services ("Global"), a New Hampshire collection company.

30. At that time, Global's president was Janine Boudreau ("Boudreau").

31. Soon after Global began attempting collection, it encountered difficulty.

32. In July 2008, as a result of a brief investigation, Global and Boudreau learned that the low collection rate was due to the fact that a substantial percentage of the LP Receivables

were fraudulent claims in that, in many cases, the underlying medication had never been dispensed.

33.     In September 2008, as it became clear to Global that it was being asked collect fraudulent insurance receivables, Global, through Boudreau, contacted the Federal Bureau of Investigation ("FBI").

34.     Thus, the FBI began investigating the LP Receivables by employing a secret undercover operation that utilized Boudreau as an undisclosed witness.

35.     In May of 2009, Sorat was indicted by the United States Attorney, admitted to the wrongs alleged in this Complaint and pled guilty to wire fraud.  (See Criminal Complaint, Plea Agreement and Agreed Statement of Facts attached as Exhibits A, B, & C).

36.     The Sorat indictment and plea agreement were kept under seal pending a further investigation.  In March of 2012, the Sorat indictment was unsealed and OSMI became aware of the facts regarding defendants' fraud.  (See Motion to Unseal attached as Exhibit D).

37.     Subsequent to learning of the Sorat fraud, OSMI determined that a large portion of the LP Receivables were in fact fraudulent and/or ineligible for insurance coverage and ultimately worthless.

38.     As a result of the Defendants' wrongful acts OSMI suffered substantial damages.

## COUNT I

**(Breach of Contract/Warranty)**

39.     The plaintiff restates and realleges the allegations contained in the foregoing paragraphs and incorporates them herein by reference.

40. Defendants, Sorat, Van Auken, Life Pharmaceuticals and Deutsche Medical warranted to OSMI that the LP Receivables were legitimate and collectable and not fraudulent or uncollectable.

41. Defendants breached their warranty to Plaintiff.

42. As a direct and proximate cause of the breach of warranty and contract the plaintiffs suffered grievous harm.

## COUNT II

### (Breach of Good Faith and Fair Dealing)

43. The plaintiff restates and realleges the allegations contained in the foregoing paragraphs and incorporates them herein by reference.

44. Defendants, Sorat, Van Auken, Life Pharmaceuticals and Deutsche Medical owed Plaintiffs a duty of good faith and fair dealing pursuant to the Contract.

45. Defendants breach their duty of good faith and fair dealing.

46. As a result of the defendants' conduct, plaintiffs suffered grievous harm.

## COUNT III

### (Misrepresentation/Fraud)

53. The plaintiff restates and realleges its allegations contained in the foregoing paragraphs and incorporates them herein by reference.

54. Defendants, Sorat, Van Auken, Life Pharmaceuticals and Deutsche Medical falsely represented to Plaintiff that the LP Receivables were not fraudulent but bona fide and collectable.

55. Defendants knew that their representations were false and intended that Plaintiff rely on those false representations.

56. Plaintiff reasonably relied on Defendants' false representations.

57. As a result of the defendants' conduct, plaintiff suffered grievous harm.

## COUNT IV

**(Violation of M.G.L. c. 93A, § 11 *et seq.* )**

47. The plaintiff restates and realleges the allegations contained in the foregoing paragraphs and incorporate them herein by reference.

48. Defendants were engaged in trade or commerce in Massachusetts for purposes of M.G.L. c. 93A, § 11, *et seq.*

49. Defendants misrepresented to the plaintiff that the DMS receivables were valid, legitimate, and collectible receivables.

50. A substantial portion of the LP Receivables was fraudulent and/or not covered by Workman's Compensation Insurance.

51. Defendants knew, or should have known, that a substantial percentage of the LP Receivables were fraudulent and/or not covered by Workman's Compensation Insurance.

52. Defendants negligently misrepresented and/or omitted information concerning the fraudulent and/or defective receivables in their sale of the LP Receivables to the plaintiffs.

53. In reliance on said misrepresentations and/or omissions of Defendants and the plaintiffs purchased the fraudulent and/or defective LP Receivables.

54. The actions of the defendants constitute unfair or deceptive acts or practices made unlawful by M.G.L. c. 93A, § 11, *et seq.*

55. As a result of the defendants' conduct, plaintiffs have suffered grievous harm.

WHEREFORE, plaintiff, Ortho Supply Management, Inc. demands:

1. As to Counts I, II, III that the Court enter judgment for the plaintiff and against the defendants jointly and severally in an amount to be determined in a trial;

2. As to Count IV that the Court determine that the actions of defendants constitute deceptive acts or practices made unlawful by M.G.L. c. 93A, § 11, *et seq*. and award to the plaintiff its costs, attorney's fees, and up to double its actual damages; and

3. That the Court award such other relief to plaintiff as it deems just and proper.

## JURY CLAIM

The plaintiff, Ortho Supply Management, Inc. claims a trial by jury on all issues so triable.

Respectfully submitted,
ORTHOSUPPLY MANAGEMENT, INC.
By its attorneys,

*/s/ Orestes G. Brown*
Orestes G. Brown (BBO #566431)
Keith L. Sachs (BBO #634025)
METAXAS BROWN PIDGEON LLP
900 Cummings Center, Suite 207T
Beverly, MA  01915
978-927-8000
obrown@metaxasbrown.com
ksachs@metaxasbrown.com


*/s/Jan R. Schlichtmann*
Dated:  November 4, 2012       Jan R. Schlichtmann (BBO #445900)
P.O. Box 233
Prides Crossing, MA  01965
978-927-1037
jan@schlichtmannlaw.com

11